## St. Paul's Church, Chestnut Hill. (*a*,

A charter will not be granted for a church with a clause which prohibits the corporation from disposing of its real estate, without the consent of the Protestant Episcopal Church of Pennsylvania and the Standing Committee of the same.

The Act 26th April 1855 requires that a provision securing to the lay members of churches the right of alienation, shall be inserted in each charter. The instrument is invalid without it.

THIS was an application for a charter of incorporation, under the provisions of the Act 6th April 1791: *Brightly's Purd.* 164.

The opinion of the court was delivered by

LEWIS, C. J.—There is a clause in the proposed charter which prohibits the corporation from disposing of its real estate "without . the consent of the Convention of the Protestant Episcopal Church of Pennsylvania, or the standing committee of the same." By the constitution of the church, the convention is composed of the clergy, and of lay deputies. They deliberate in one body; but, when five members require it, they vote as two distinct orders, and the concurrence of each order is necessary to give validity to any measure. The standing committee is elected by the convention, and is composed of five persons of each order. Any three members (the whole having been summoned) constitute a quorum. It is very clear that the lay members could not control either body so as to give its consent to alienation of property, if the clerical order opposed it. In the convention a clerical majority of only one vote has the power to prevent the alienation, although it may be desired by the unanimous voice of all the lay members of the corporation, and all the lay deputies in the convention. The lay authorities of the corporation, which have the general control of its temporal affairs, are deprived by the clause in the charter to which we have referred, of all powers to dispose of the real estate belonging to the proposed corporation. Is this a fair compliance with the law enacted by the legislature of this Commonwealth on the 26th April 1855? We think not. That act expressly declares that whensoever any property, real or personal, shall hereafter be bequeathed, devised, or conveyed to any ecclesiastical corporation, bishop, ecclesiastic, or other person, for the use of any church, congregation, or religious society, for religious worship or sepulture, or the maintenance of either, the same not

(*a*) This case was decided in 1856, but omitted in the reports of that term

[St. Paul's Church, Chestnut Hill.]

to be otherwise taken and held or enure to them, subject to the control and disposition of the lay members of such church, congregation, or religious society, or such constituted officers or representatives thereof as shall be composed of a majority of lay members, citizens of Pennsylvania, having a controlling power, according to the rules and regulations, usages or corporate requirements thereof, so far as consistent herewith. And no charter hereafter granted by any court for any church, congregation, or religious society shall be valid, without requiring such property to be taken, held, and to enure, subject as aforesaid. There is an exception in the statute which is not material to the present application.

The terms of the Act of Assembly are imperative. It has been duly enacted by the law-making power, in pursuance of constitutional authority. It is not for us to weigh the policy of the extensive change which this enactment must make in the temporal affairs of the Episcopal church, and other religious corporations within its operation. It was for the legislative power to decide upon the propriety of keeping the landed property within the state under the control of the lay members of corporations created by law. It is our duty to enforce the law as we find it written. We have no discretion on this point.

The statute requires that the provision securing to the lay members the right of alienation, shall be inserted in each charter. The instrument is declared to be invalid without it. It would be well, in preparing charters under this enactment, to follow the words of the law as nearly as possible. It is dangerous to substitute others supposed to be of equivalent import. It is improper and inconvenient to require the court, on an *ex parte* application for a charter, to give a construction to every new form of words which appellants may think proper to introduce, as a substitute for what may be presumed to be the well-weighed words of the legislature. In the instrument now before us, the word "enure" has been omitted, although the Act of Assembly requires its insertion. It was not inserted in the statute without an object, and it cannot be dispensed with in the charter.

For these reasons we are obliged to decline granting the certificate of incorporation.